IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALEXANDER OLIVIERI, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-4471 |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner, a state inmate proceeding *pro se*, filed this section 2254 habeas case challenging his conviction and sixty-year sentence for murder. Respondent filed a motion for summary judgment (Docket Entry No. 28), to which petitioner filed a response (Docket Entry No. 34).

Having considered the motion, the response, the pleadings, the record, and the applicable law, the Court **GRANTS** the motion for summary judgment and **DISMISSES** this lawsuit for the reasons shown below.

## I. BACKGROUND AND CLAIMS

A jury found petitioner guilty of murder in Harris County, Texas, and assessed punishment at sixty years' imprisonment in August 2012. The conviction was affirmed on appeal in an unpublished opinion, and discretionary review was refused in June 2014. *State v. Olivieri*, No. 01–12–00722–CR, 2014 WL 700778 (Tex. App. – Houston [1st Dist.] 2014, pet. ref'd). The Texas Court of Criminal Appeals denied petitioner's first

application for state habeas relief on August 22, 2018, and dismissed his second application on April 17, 2019, as an abuse of the writ.[1]

Petitioner presents the following grounds for habeas relief in this petition:

1.    The evidence was insufficient to corroborate the accomplice witness testimony of Alan Perez.

2.    He was denied his *Miranda* warnings during a pretrial interview.

3.    Trial counsel was ineffective in

    (a)    failing to undertake proper pretrial investigation;

    (b)    failing to call defense witnesses;

    (c)    failing to conduct proper cross-examination;

    (d)    making an improper comment during cross-examination of Perez;

    (e)    failing to object to the State's improper jury argument; and

    (f)    failing to suppress petitioner's pretrial statement due to lack of *Miranda* warnings.

4.    Appellate counsel was ineffective in failing to raise viable claims on appeal.

Respondent argues that these grounds are unexhausted, procedurally defaulted, and/or without merit and should be summarily dismissed.

---

[1]The Court stayed this federal habeas case pending disposition of the second application for state habeas relief.

## II. FACTUAL BACKGROUND

The intermediate state court of appeals set forth the following statement of facts in its opinion affirming petitioner's conviction:

> On April 3, 2011, the body of seventeen-year-old Bridgett Frisbie was discovered by a group of children in the woods behind a housing development in Katy, Texas. Neighbors reported hearing a gunshot early that morning (around 2:45 a.m.), and reported to police that there had recently been a drive-by shooting in the area. The medical examiner testified that Bridgett had been shot in the back of the head at close range.
>
> Early in the investigation, Investigator James Cassidy learned that Alan Perez had come forward with information about the case. On the evening of April 5, 2011, Perez told his mother that he had gone with appellant to help scare, or "rough up" Bridgett, but that appellant had shot her without warning. Perez's family hired an attorney who negotiated an immunity agreement for Perez in exchange for his statement and testimony.
>
> According to the testimony of several witnesses, including Perez, appellant was upset with Bridgett because she would not keep quiet about a drive-by shooting she participated in with appellant.
>
> A.     Perez's testimony
>
> Perez and appellant met in high school. They joined the National Guard together, but when appellant returned from basic training, he started attending a different school. According to Perez, Bridgett was one of the new friends appellant made at his new school.
>
> Perez testified that Bridgett had been bragging about participating in a drive-by shooting with a friend, and that appellant had later told Perez that he was the shooter. Specifically, appellant told Perez that Bridgett "drove and he shot at her ex-boyfriend's house with his Yugo semiautomatic rifle."
>
> Perez testified that, on the evening of April 2, 2011, appellant asked him for a favor. Appellant explained that he wanted to "rough up" Bridgett for telling friends about the [Larsen] drive-by, and he wanted Perez there as backup. Appellant instructed Perez to "get his gear" and bring a weapon.

Perez brought a .380 pistol and wore his green military uniform, mask, and gloves. Appellant wore his 9mm Beretta pistol in a shoulder holster under his jacket.

According to Perez, they went to appellant's house after midnight. Appellant then called Bridgett and asked her to ride with him to pick up her boyfriend, Zach Richards, from the bus station. Bridgett declined, saying that she was busy. Appellant decided to go to Bridgett's house, and told Perez to hide under a blanket in the back of his Suburban. If appellant was successful in luring Bridgett into the vehicle, appellant instructed Perez to get out and follow appellant and Bridgett at a distance when they reached their destination.

Bridgett was leaving on her four-wheeler to go meet friends when they got to her house, so they left. They set out again to find her a little later and found her pushing her four-wheeler because it had run out of gas. Appellant asked her to help him "dig up a cache of some random thing." She initially said "no," but eventually he talked her into going with him. She put her four-wheeler in the garage and climbed into the passenger seat of appellant's Suburban.

Perez was still hiding in the back of the vehicle under blankets. Appellant drove to the same neighborhood where he and Bridgett had done the drive-by shooting. Appellant and Bridgett got out of the vehicle, and Perez waited a minute and then got out and followed them. Perez saw appellant carrying a shovel and kind of leading Bridgett with a flashlight. Appellant pointed out a spot and asked Bridgett to start digging. As she bent over to dig, Perez saw appellant reach into his jacket, pull out his gun, put it to the back of Bridgett's neck, and fire.

Perez testified that he was shocked because he "thought [appellant] might threaten her, might poke her with the gun, but he had just shot her." Appellant ran towards Perez, and Perez "cursed at him for a bit." Appellant told Perez to shut up and run towards the car. Appellant returned to Bridgett's body to retrieve his shovel, flashlight, and Bridgett's cell phone. They drove to a "water tunnel" near Perez's house where Perez, and then appellant, tried to destroy Bridgett's phone by banging it with the shovel. Appellant hid the phone in the water tunnel, and they returned to appellant's house. They took everything out of the Suburban and left it in appellant's room.

Appellant and Perez then went about 4:00 a.m. to pick up Richards at the bus station. Appellant offered to let Richards stay the night at his house, so they went back to appellant's house and all went to sleep. They did not say anything to Richards about the murder, but appellant told Perez that they should be each other's alibi, and that Perez should tell the police that he "had stayed at [appellant's] house, hung out, watched movies and then went to pick up" Richards.

A couple of days later, appellant's mom picked up both Perez and appellant and took them back to appellant's house. Appellant's mom had heard about Bridgett's murder and asked them numerous questions. When they got the opportunity to be alone, appellant told Perez that he was going to get rid of his Beretta and to stick to their alibi story.

Perez went home that night and told his parents what had happened. Perez turned over his gun and the clothes he wore the night of the murder to police. He also led police to Bridgett's destroyed phone.

Perez identified a picture of appellant's Beretta at trial. When a September 2010 Youtube video of appellant shooting at a gun range entitled "Me and My Beretta 9 Millimeter" was played for the jury, Perez testified that he had filmed the video for appellant on appellant's cell phone. Perez testified that the gun in the video was the same one that appellant used to shoot Bridgett.

B.      Additional State's Evidence

    1.      Zach Richards's testimony

Bridgett's boyfriend, Richards, testified that in March of 2011 appellant stated that he was "going to deal with something," grabbed his AK–47, and left with Bridgett in Bridgett's car. Appellant told Richards later that he had shot at Bridgett's ex-boyfriend's house from Bridgett's car while Bridgett drove past. Appellant told Richards that he participated in the drive by "to do a favor for" Bridgett and just because "he could do it." Richards testified that Bridgett kept bragging about the shooting and that appellant angrily confronted her and told her to stop telling people.

On April 3, 2011, appellant had agreed to bring Bridgett to the Houston bus station to pick up Richards about 1:00 a.m. When appellant did not show up, Richards got a ride to a Denny's and finally reached appellant by

5

phone about 2:30 or 3:00 a.m. Appellant told him that he was at home, but would come pick him up. Appellant finally arrived several hours late and Perez was with him. When Richards asked about Bridgett, appellant told him that he tried to get in contact with her and went by her house, but that he could not find her.

After getting some sleep at appellant's house, Richards walked to Bridgett's house. Her dad answered the door and said that Bridgett had been out all night and that he did not know where she was. Richards tried to locate her through friends over the next couple of days until he heard the news that her body had been found.

Richards testified that he had been to the woods where Bridgett was shot with both appellant and Bridgett, so appellant was familiar with the area. Appellant had also taken Richards to the water tunnels where Bridgett's phone was found so they could shoot appellant's AK–47. Finally, Richards testified that it was common for appellant to have a gun with him.

### 2. Robert Frisbie

Robert Frisbie, Bridgett's father, testified that he last saw his daughter on April 2, 2011. On that day, he bought her a new rave outfit—blue-green faux-fur leggings, skirt and top. Appellant came by their house after they returned home from shopping, and Frisbie saw him having a tense conversation with Bridgett at the back door. Bridgett did not leave with appellant at that time.

Sometime after appellant left, another of Bridgett's friends, Kendall Suto, came over for dinner and stayed for the evening. Frisbie drove Bridgett and Kendall to a rave party, but it was closed and they eventually returned home a little after 10:00 p.m. Kendall's ride was not supposed to pick him up until midnight, so Bridgett and Kendall settled in to watch a movie. Bridgett was still wearing her new rave outfit when Frisbie went to bed and set his alarm for midnight. He called downstairs when he woke up, but Bridgett said that Kendall's ride had not arrived yet. Frisbie told Bridgett to wake him when Kendall left so that he could lock up the house. When Frisbie awoke again about 3:00 am, he found the back door and the garage door open. He locked up so that Bridgett could not sneak back in without his knowledge. Then he realized that his cell phone was missing. He had taken away Bridgett's phone recently, so he assumed that she took his when she went out.

Frisbie called his cell phone repeatedly and looked online to track the phone's GPS location. After he was unable to reach her or ascertain the location of the phone, he gave up and decided to wait for her to return. He was unable to locate her the following day, despite calling several of her friends. Later the evening of April 3, he read online about a body being found nearby, and he called police and discovered it was Bridgett.

### 3. Physical Evidence

Appellant was arrested, and Samuel Olivieri, appellant's father, gave consent for the police to search their house and appellant's Suburban. Neither the AK–47 nor the Beretta were found. But the police did recover an owner's manual for a Beretta 9 millimeter.

In appellant's Suburban, police recovered a blanket, a shovel, and rifle and shotgun shell casings, as well as trace evidence samples—including fibers—from the passenger's seat and floor board. Ballistics testing revealed that the shell casing from the Suburban matched the shell casing recovered from the drive-by shooting at Larsen's house. Fibers lifted from the passenger seat of the car matched Bridgett's new rave faux fur outfit that she was wearing when her father last saw her on the night of April 2.

### 4. Officer J. Cassidy's Investigation

Officer Cassidy testified that Bridgett was still wearing the new faux fur outfit when her body was discovered, and that there was a 9 millimeter casing found near her body. He interviewed appellant early on in his investigation, before appellant was considered a suspect. The tape of that interview was played for the jury. In that statement, appellant said that he went by Bridgett's house about 5:00 p.m. on April 2. He said that he and Perez came back later that night to pick her up on the way to the bus station to get Richards, but that she was not waiting outside so he left without ever seeing her. Appellant also denied having any knowledge about handguns.

### C. Defendant's Evidence

Appellant's father, Samuel Olivieri testified that he had previously owned a 9mm Beretta, but that he sold it in 2003. He testified that, when he went to bed about 10:00 or 10:30 on April 2, appellant and Perez were there

playing a video game. When he woke up the next morning, Richards was there too, asleep on an air mattress.

Appellant's mother, Angelica Olivieri, testified that Perez was over at their house the evening of April 2 playing video games with appellant. Around 10:30, Perez asked her if he could spend the night and she told him he could sleep on the couch. She testified that appellant then went to bed in his room about 11:30 p.m., and that his door squeaked so loudly that she would always hear if he opened or closed his bedroom door. At about 12:45 a.m., she got up to get a drink of water and noticed that Perez was gone from the couch. She got up again at 2:10 a.m. and looked in on her mom, her daughter, and appellant. She testified that appellant was asleep at that time. A little after 3:00 a.m., she heard appellant get up and he came and told her that he was going to pick up Richards. Perez was with him at that point. When she got up again, she found appellant, Perez, and Richards all asleep.

*Olivieri*, at *1–4. The jury found petitioner guilty of murder and assessed punishment at sixty years' confinement.

## III. THE APPLICABLE LEGAL STANDARDS

A.    Habeas Review

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U .S.C. § 2254. Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 98–99 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule

that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102. As stated by the Supreme Court in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal.

*Id.*, at 102–103 (emphasis added; internal citations omitted).

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is

9

objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller–El*, 537 U.S. at 330–31. This presumption of correctness extends not only to express factual findings, but also to implicit or unarticulated findings which are necessary to the state court's conclusions of mixed law and fact. *Murphy v. Davis*, 901 F.3d 578, 597 (5th Cir. 2018).

The state trial court on collateral review in petitioner's case made express findings of fact and conclusions of law. However, as a general conclusion of law, the state trial court determined that:

> The applicant fails to meet his burden and fails to state facts for which relief can be granted in habeas corpus throughout his application. To prevail upon a post-conviction writ of habeas corpus, the applicant bears the burden of proving, by a preponderance of the evidence, the facts that would entitle him to relief. Conclusory allegations are not enough to warrant habeas relief. Even if sworn to, the allegations are insufficient to overcome the State's denials.

(Docket Entry No. 29-30, pp. 135–136, case citations omitted).

B.  Summary Judgment

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a

properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings. Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, the state court's findings must be accepted as correct by the federal habeas court. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

## IV. ACCOMPLICE WITNESS TESTIMONY

Petitioner argues that the State violated his due process rights by presenting insufficient evidence to corroborate the testimony of Alan Perez. Petitioner contends that Perez was an accomplice as a matter of law under state law, and that the State failed to present independent corroborating evidence to support Perez's testimony.

Petitioner's argument raises no cognizable federal habeas claim. The accomplice witness rule arises under Texas state law, not federal law. *See* TEX. CODE CRIM. PROC. art. 38.14 ("A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense

committed; and the corroboration is not sufficient if it merely shows the commission of the offense."). The federal Constitution imposes no requirement that the testimony of an accomplice witness be corroborated by independent evidence. The prosecution's failure to satisfy the state law accomplice witness sufficiency rule, or a state court's failure to enforce that rule, are not a basis for federal habeas relief. *Brown v. Collins*, 937 F.2d 175, 182 n. 12 (5th Cir. 1991).

Even assuming an issue of federal constitutional dimension were raised, the intermediate state court of appeals rejected this claim on state law grounds on direct appeal. The court determined that even if Perez were an accomplice as a matter of law, there was sufficient independent evidence corroborating his testimony against petitioner. *Olivieri*, at *5–8.

Moreover, in rejecting this claim on collateral review, the state trial court made the following relevant findings of fact:

> 7. The Court finds that the applicant's allegation that there was "no evidence" is a sufficiency claim, which is not cognizable in habeas.
>
> 8. The Court finds that the Court of Appeals summarized the non-accomplice evidence in its opinion, finding that it was sufficient to render harmless any alleged error by the trial court's refusal to instruct the jury that the State's witness Alan Perez was an accomplice as a matter of law.

(Docket Entry No. 29-30, p. 131, record citation omitted.) The trial court also made the following relevant conclusions of law:

3. An allegation that was rejected on direct appeal is not cognizable on habeas corpus.

4. The applicant's attempts to challenge the sufficiency of the evidence are not cognizable [on habeas].

*Id.*, p. 136, case citations omitted.

Thus, petitioner's claim was rejected on both direct appeal and state collateral review under state law grounds, not federal grounds, and no cognizable claim for federal habeas relief is raised. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of petitioner's claim.

## V. LACK OF *MIRANDA* WARNINGS

According to petitioner, the State violated his Fifth Amendment protection against self-incrimination by not reading him his *Miranda* rights before interviewing him. Petitioner claims in this proceeding that he was "in custody" at the time of the interview and was questioned without benefit of *Miranda* warnings.

During the guilt-innocence phase of trial in the instant case, Deputy James Cassidy, a deputy with the Homicide Unit of the Harris County Sheriff's Office, testified to his investigation of the case and the circumstances surrounding his interview of petitioner. (Docket Entry No. 29-13, pp. 27–69.) As to the latter event, Cassidy testified under questioning by the prosecution as follows:

Q. And when you first saw Alex Olivieri [at the complainant's high school], did you have any idea that he would have been involved in the death?

A. No. The only information we were provided was that he had given another of her boyfriends a ride and that he knew her. But we were initially provided no information that he was a suspect or anything to that extent.

Q. So at the time you met him, he was just a potential witness or somebody that you were trying to just question and interview like everybody else?

A. Sure. In our job we try to get a feel for people, try to learn who their associates are, try to get a vibe as to what they might know and who they are. And that was our purpose of interviewing him at that point. We had no knowledge if he was a suspect yet.

(Docket Entry No. 29-13, pp. 39–40.) Cassidy further testified that he audiotaped his interview with petitioner, as he did with almost all of the individuals he interviewed, and that the interview took place in a private room at petitioner's high school. *Id.*, pp. 41–42. Cassidy stated that, even after completion of the interview, petitioner was not considered a suspect in the complainant's death. *Id.*, p. 48. The state court record also shows that, in raising an objection to the admissibility of the audiotape at trial, trial counsel acknowledged that petitioner had not been in custody during the interview. *Id.*, p. 43.

Petitioner did not raise this issue on direct appeal. In rejecting his *Miranda* claim on state collateral review, the state trial court made the following relevant findings of fact:

5. The Court finds that the applicant made a voluntary, non-custodial statement to the police.

14

6.  The Court finds that the applicant's allegation that his statement was "illegally used" is a record claim, which is not cognizable in habeas.

(Docket Entry No. 29-30, p. 131, record citations omitted.)  The state trial court also made a conclusion of law that petitioner's record claims should not be considered in habeas because record claims should be raised on appeal.  *Id.*, p. 135.  Thus, the state trial court rejected petitioner's claim on both procedural and substantive grounds.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment.  *Coleman v. Thompson*, 501 U.S. 722, 731–732 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997).  A procedural default of this type will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case clearly and expressly indicated that its judgment was independent of federal law and rested on a state procedural bar.  *Harris v. Reed*, 489 U.S. 255, 263 (1989); *Glover*, 128 F.3d at 902.  Federal habeas review is barred even if the state court alternatively address the merits.  *See Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004).

The Fifth Circuit Court of Appeals has recognized Texas's procedural rule barring consideration of record-based claims not raised on direct appeal to be an adequate state ground for barring federal habeas review.  *Dorsey v. Quarterman*, 494 F.3d 527, 532 (5th Cir. 2007).  The state trial court clearly and expressly indicated on collateral review that petitioner's claim was a record claim and not cognizable in habeas.  Thus, the state

court's decision rested on an "independent and adequate" state law ground and cannot be reconsidered by this Court.

Regardless, the state trial court also denied habeas relief on the substantive merits of petitioner's claim. The court found that the statement was voluntary and non-custodial, and made the following additional relevant findings of fact:

21. The Court finds that, even if the facts provided in the applicant's memorandum are considered, the applicant fails to prove that [trial counsel] was objectively unreasonable or deficient for failing to file a pretrial motion to suppress the applicant's voluntary, non-custodial statement to the police.

22. The Court finds that [trial counsel] objected to the State's use of the applicant's statement during trial, which resulted in delaying the State from publishing the statement until re-direct after portions were redacted.

23. The Court finds that the applicant fails to overcome the strong presumption that all of [trial counsel]'s actions were reasonable and based on sound trial strategy.

24. The Court finds that the applicant fails to allege, and prove that there is a reasonable probability that, but for [trial counsel]'s alleged deficient performance, the result of the proceeding would have been different.

(Docket Entry No. 29-30, pp. 134–135, record citations omitted.)

No probative summary judgment evidence appears in the record supporting petitioner's claim that his statement was non-voluntary and custodial. Indeed, defense counsel acknowledged on the record that the statement was non-custodial in nature. Although petitioner submitted his own affidavit on state collateral review, he did not

allege that he had been forced to answer Cassidy's questions or that he felt he was not at liberty to terminate the interrogation and leave:

> One of the main issues I wish to bring specific attention to within my enclosed writ is the issues surrounding the argument on my GROUND NUMBER ONE (1) argument, entitled "Illegally Obtained Statements/Confession." On or about the date of April 5, 2011, officers from the sheriff's department (Deputy James Cassidy specifically) had an interview with me concerning the death of Bridgett Frisbie (the Complainant in my case). Before the start of the interview I asked deputy Cassidy if I needed an attorney to assist me with the direction(s) of the interview, to which he (Cassidy) responded by telling me: "No, you're not under arrest, we just need to ask you a few questions in regards to Bridgett Frisbie." Therefore, believing the interview was harmless, I spoke with deputy Cassidy for about 25 minutes. However, during my trial proceedings, deputy Cassidy was allowed to use my statements against me by playing an audio of the interview, hence indirectly forcing me to be a witness against myself.
>
> Had I known that my recorded statements were going to be used against me in a court of law, I would not have agreed to an interview with deputy Cassidy without the aid and assistance, from a professional attorney, who would have at least informed me of my *Miranda* rights.

(Docket Entry No. 29-30, p. 43, capitalization in original.) It bears noting that, although petitioner refers to the audiotape as a "Statements/Confession," he made no confessions during the interview and the audiotape was never referred to as a confession during trial.

As correctly noted by respondent, petitioner submitted a new affidavit in this federal habeas proceeding, wherein he now claims that the interview had been custodial and involuntary. This new, self-serving affidavit (Docket Entry No. 8) was not presented to the state court during collateral review, and formed no part of the state court record. When a state court adjudicates a habeas claim on the merits, federal review of

the claim is limited to the record that was before the state court, and evidence introduced in federal court has no bearing on section 2254(d) review. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Rabe v. Thaler*, 649 F.3d 305, 308–09 (5th Cir. 2011). Consequently, petitioner's new affidavit may not, and will not, be considered by this Court.

Petitioner's *Miranda*-based claim is procedurally defaulted and barred from consideration by this Court. He establishes neither cause nor prejudice as to the default. Petitioner further fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of petitioner's claim for denial of his *Miranda* warnings.

## VI. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

Credibility findings, such as those made by the state trial court on collateral review with respect to defense counsel's affidavit testimony, are entitled to substantial deference on federal habeas review. *See Coleman v. Quarterman*, 456 F.3d 537, 541

(5th Cir. 2006). Thus, the state court's factual findings and credibility determinations are presumed correct for purposes of federal habeas review unless they are rebutted with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001); *see also Mays v. Stephens*, 757 F.3d 211, 214 (5th Cir. 2014) ("The presumption [of correctness] is especially strong when the state habeas court and the trial court are one in the same.").

Petitioner contends that trial counsel was ineffective in the following particulars.

A.    Failure to investigate

Petitioner alleges that trial counsel was ineffective in failing to conduct a proper pretrial investigation. Specifically, he claims that counsel did not sufficiently investigate the circumstances of petitioner's Youtube video entitled, "Me and My Berretta 9 Millimeter," a video which depicts him firing a handgun of the same variety used in the complainant's murder. Petitioner further complains that counsel failed to investigate the ballistics reports.

Trial counsel submitted an affidavit on state collateral review, in which he testified in relevant part as follows:

> My preparation for his case included a review of the offense report, crime scene photos, crime scene video, and numerous recorded statements that were obtained by the Harris County Sheriff's Office investigators during the investigation of this case. Preparation also included obtaining the identities of witnesses who could testify favorably for the Applicant. Strategic reasons prevented me from being able to use those witnesses. Friends and school mates were no longer interested in being associated with the Applicant because of the allegation or they were involved and knew information that was detrimental to the Applicant on the extraneous

20

offense. He also provided military recruiters names as potential character witnesses, however based upon the interviews they had with the Harris County Sheriff's Homicide Investigators, I did not believe that they would ultimately be beneficial witnesses to his cause. I performed research on the internet from postings allegedly made by the Applicant. The case was also the subject of the "First 48" television series and I reviewed the aired television footage on several occasions. I made a typewritten summary of the offense report that was shared with the Applicant. I reviewed and transcribed the taped interview of Alan Perez, who was granted immunity to testify against the Applicant. I shared that statement with the Applicant and requested that he go through that statement line by line to determine if he knew of anything in the statement which we could use to demonstrate a lack of credibility or any potential area for cross examination of that witness. I worked with an investigator, Brian Benken and consulted with him on the case which included having him take photos of Applicant's father's truck which was a vehicle alleged to have been used in the murder and also the extraneous drive-by shooting. While the Applicant was in custody I visited him in the jail and after I filed a Writ of Habeas Corpus and the Court set a bond, which his family made for him, I met with him numerous times at my office as well as at his residence. I also met several times with his mother and father regarding the case, and they both were witnesses on the case. I also went to the scene of the homicide, the scene of the recovery of the complainant's cell phone, the Applicant's residence, all while I was accompanied by the Applicant. We also drove by the complainant's father's residence so I could get an understanding of where it was in relation to the other locations. Independent of going with the Applicant, I also went to the homicide scene alone and the location of the drive-by-shooting that the State used as an extraneous offense in this prosecution.

Regarding the allegation that I did not investigate the 9mm handgun on the Youtube video, had the Applicant ever told me that this was a gun that was ". . . either 1) rented to the Applicant for target practice by firing range's personnel; and/or 2) was given to the Applicant 'on loan' by another customer at the firing range for target practice," I would have investigated both of those claims. However, during my many meetings with the Applicant and several discussions regarding a 9mm handgun, the alleged murder weapon, for which there was an owner's manual recovered from the Applicant's residence, the Applicant never once told me that the gun that appeared on the Youtube video was rented at the gun range or that he borrowed it from a patron at the gun range.

The conversations that I did have with the Applicant regarding a 9mm handgun, for which he had an owner's manual, was an attempt to find out what happened to that gun. I was told that the gun had been sold to a man in Jewett, Texas before they moved to Houston. I explained that it would be beneficial for us to prove up that transaction to explain the absence of a 9mm handgun in the residence when there was an owner's manual in the residence. The Applicant and his father both appeared to be reluctant to provide further details. When I continued to press regarding this issue, I was eventually told that the man was named Jimmy Smith and that he had passed away in 2009 from cancer. I continued to press for more information and explained how important an issue this was in the prosecution of the case and the only additional information ever provided was that he was a master mason but nothing further so that I could attempt to locate family members, as firearms are often passed down to relatives upon a person's passing. At no time during these discussions did the Applicant ever raise a possible alternative that the gun in the Youtube video was rented at the firing range or loaned to the Applicant at the firing range.

The Applicant states that I did not properly investigate that Alan Perez fired the fatal shot at the complainant with his own handgun. However, when Alan Perez was interviewed by the Homicide Detectives, he turned over a Masterpiece Arms brand 9mm Luger semi-automatic pistol, serial number F10025. It was submitted to the ballistics lab for testing. It was found to be in good working order. However, when casings fired in Alan Perez's weapon were compared to the shell casing recovered from the murder scene his weapon was eliminated as having possibly fired the bullet at the scene of the homicide. Strategically, I would not have pursued the line of questioning suggested by the Applicant since there is ballistics evidence which would have proven that to be false.

(Docket Entry No. 29-30, pp. 120–123.)

In rejecting petitioner's claim for ineffective assistance of counsel, the state trial court made the following relevant findings of fact on collateral review:

11. The Court finds that the applicant fails to meet his burden when he alleges that he received ineffective assistance of trial counsel. The applicant fails to provide sufficient supporting facts in his form application, and the facts provided in his memorandum will not be considered.

12. The Court finds that [trial counsel] filed an affidavit in response to an Order for Affidavit. The Court finds that [trial counsel's] affidavit is credible and the facts asserted therein to be true.

13. The Court finds that, even if the facts provided in the applicant's memorandum are considered, the applicant fails to prove that [trial counsel] failed to conduct an adequate pretrial investigation.

14. The Court finds that the applicant only poses a hypothetical and never claims in his form application or memorandum that the gun that appeared on the Youtube video was actually rented at the gun range or borrowed from a patron at the gun range.

15. The Court finds, based on the credible affidavit of [trial counsel], that the applicant never told [trial counsel] that the gun that appeared on the Youtube video was rented at the gun range or borrowed from a patron at the gun range.

16. The Court finds, based on the credible affidavit of [trial counsel], that [trial counsel] conducted an adequate pretrial investigation.

(Docket Entry No. 29-30, pp. 132–133, record citations omitted.) The state trial court

also made the following relevant conclusions of law:

5. The applicant fails to prove by a preponderance of the evidence that trial counsel's representation fell below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

6. The applicant fails to prove that [trial counsel] failed to conduct an adequate pretrial investigation.

*Id.*, pp. 136–137, case citations omitted.

A petitioner who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. *United States v. Bernard*, 762 F.3d 467, 472 (5th Cir. 2014); *see also Day v. Quarterman*, 566 F.3d 527, 540–41 (5th Cir. 2009). Petitioner does not claim that he told counsel the firearm was not his, nor does he show that additional investigation would have shown it belonged to the gun range or another patron. Petitioner further fails to present probative summary judgment evidence in the record as to his allegations regarding the ballistics reports.

Petitioner's conclusory allegations are insufficient to demonstrate deficient performance or actual prejudice under *Strickland. See Day*, 566 F.3d at 540–41; *see also Lincecum v. Collins*, 958 F.2d 1271, 1279 (5th Cir. 1992) (denying habeas relief where petitioner offered nothing more than conclusory allegations to support his claim that counsel was ineffective for failing to investigate and present evidence). Petitioner's unsupported claims warrant no relief.

Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of petitioner's claims for ineffective assistance of trial counsel premised on failure to investigate.

B.   Failure to call defense witnesses

Petitioner next complains that trial counsel failed to call as defense witnesses Kendall Suto, David Harris, Chelsea Safran, Megan Owen, and Heath Bishop, and did not call an expert witness to rebut the State's fiber expert's testimony.

In response to this claim, trial counsel submitted an affidavit on state collateral review, in which he testified in relevant part as follows:

> [My trial] [p]reparation also included obtaining the identities of witnesses who could testify favorably for the Applicant. Strategic reasons prevented me from being able to use those witnesses. Friends and school mates were no longer interested in being associated with the Applicant because of the allegation or they were involved and knew information that was detrimental to the Applicant on the extraneous offense. He also provided military recruiters names as potential character witnesses, however based upon the interviews they had with the Harris County Sheriff's Homicide Investigators, I did not believe that they would ultimately be beneficial witnesses to his cause.
>
> \*   \*   \*   \*
>
> I did not speak to Kendall Suto, but I did listen to the audio recording of his interview. The story he presented to the investigators was that he left the complainant's residence around 12:30 a.m. on the night of the incident. He was picked up from that location by a friend. He further stated that the complainant sent him a message later, around 2:00 a.m. – 2:30 a.m. stating that she wanted to hang out. He called her and she said that she was out on her dirt bike but that it had run out of gas. Kendall Suto arrived in the area approximately 10 minutes later accompanied by the same friend who had picked him up from the complainant's residence earlier. He could not find the complainant. He eventually went back to her house where he found the dirt bike but she was not there. When he could not find her, he contacted a mutual friend, Chelsea Safran, and told her that the complainant was missing. Homicide investigators later verified that information with Chelsea Safran.

The State subpoenaed Kendall Suto to court but did not call him as a witness. I was surprised that he wasn't called since the DNA evidence linking him to the complainant was placed into evidence. I did not want to call him as a witness for several reasons. First, Alan Perez, the State's only witness linking the Applicant to the homicide, stated that he and the Applicant first encountered the complainant when she was leaving her residence on her dirt bike and that they later turned around to go back for her when they encountered her on the roadway because her dirt bike had run out of gas. He stated the Applicant asked her to come help him pick up a "cache" and she agreed but stated that she needed to be back in 15 minutes because she was meeting up with friends. Kendall Suto would corroborate details of Alan Perez's testimony that could not otherwise be corroborated. Secondly, he was picked up from the location by a friend; and had that same friend with him when he returned to meet up with the complainant. He would basically have an alibi witness to prove he wasn't involved. Lastly, he told police that he called Chelsea Safran when he realized that the complainant was missing, and that was corroborated by Chelsea Safran.

I had a conversation with the Applicant regarding Kendall Suto and told him that I believed that the State not calling Suto was a mistake. He would be a "missing witness" which I felt looked more incriminating given the circumstances of the DNA evidence. I felt there was more value to his absence as a witness than could be gained by calling him as a witness. I believe that my strategy is clear from the closing argument I made in this case (as referenced in the Applicant's application).

I believe that this went further in trying to establish some reasonable doubt regarding the Applicant's guilt rather than having Kendall Suto testifying and explaining away the presence of his DNA. While I do agree that there is potential shock value to the DNA evidence, I believe that the value of that evidence, as it relates to attempting to create reasonable doubt as to the guilt of the Applicant, is lessened when Kendall Suto testifies and explains the circumstances, then corroborates that explanation when he testifies that he was picked up by a friend from the complainant's home and called a friend when he realized the complainant was missing. This explanation coupled with his corroboration of the testimony of Alan Perez [made] it extremely risky to call him as a witness. What we needed about Kendall Suto was the DNA evidence found on the complainant and his claim of no romantic intentions that he made to her father. Both of those facts were

presented for the jury's consideration, without any rebuttal or explanation by Kendall Suto or the State of Texas.

(Docket Entry No. 29-30, pp. 120–125.)

In rejecting petitioner's claim for ineffective assistance, the state trial court made the following relevant findings of fact:

11. The Court finds that the applicant fails to meet his burden when he alleges that he received ineffective assistance of trial counsel. The applicant fails to provide sufficient supporting facts in his form application, and the facts provided in his memorandum will not be considered.

12. The Court finds that [trial counsel] filed an affidavit in response to an Order for Affidavit. The Court finds that [trial counsel's] affidavit is credible and the facts asserted therein to be true.

\* \* \* \*

17. The Court finds that, even if the facts provided in the applicant's memorandum are considered, the applicant fails to prove that [trial counsel] was objectively unreasonable or deficient for failing to call additional witnesses on the applicant's behalf, including Kendall Suto.

18. The Court finds, based on the credible affidavit of [trial counsel], that [trial counsel] obtained the identities of witnesses who might testify favorably for the applicant, but that [he] did not call them to testify for strategic reasons, including unwillingness to testify and knowledge of detrimental information about the applicant.

19. The Court finds, based on the credible affidavit of [trial counsel], that [trial counsel]'s decision not to call Kendall Suto as a witness during trial was based on sound trial strategy.

(Docket Entry No. 29-30, pp. 132–134, record citations omitted.)  The state trial court also made the following relevant conclusions of law:

5. The applicant fails to prove by a preponderance of the evidence that trial counsel's representation fell below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

\* \* \* \*

9. The applicant fails to overcome the strong presumption that trial counsel's actions were reasonable and based on sound trial strategy.

10. The totality of the representation afforded the applicant was sufficient to protect his right to reasonably effective assistance of trial counsel.

*Id.*, pp. 136–137, case citations omitted.

A petitioner who alleges ineffective assistance of counsel based on the failure to call a witness, whether lay or expert, must "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to the particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (citations omitted). Absent probative evidence in the record establishing these requirements, petitioner's claims are speculative and conclusory and warrant no relief. *See Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001). Moreover, petitioner fails to identify an available expert witness who would have rebutted the testimony of the State's fiber expert or show that the expert's proposed testimony would have been favorable to the defense.

Petitioner's unsubstantiated allegations are insufficient to refute the state court's findings, which are supported by the record, and do not demonstrate that trial counsel was deficient in the presentation of witness testimony at trial. *See Day*, 566 F.3d at 540–541; *see also Lincecum*, 958 F.2d at 1279 (denying habeas relief where petitioner "offered nothing more than the conclusory allegations in his pleadings" to support claim that counsel was ineffective for failing to investigate and present evidence). Petitioner establishes neither deficient performance nor actual prejudice under *Strickland*.

Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of petitioner's claims for ineffective assistance of trial counsel, premised on a failure to call defense witnesses.

C.    Making improper trial comment

Petitioner also accuses trial counsel of making an improper comment during trial that implied petitioner had shot the complainant.

The state court record shows that the State's eyewitness Alan Perez testified that he saw petitioner place his gun against the back of the complainant's neck and shoot her. (Docket Entry No. 29-12, pp. 94–95.) Perez testified he was in shock afterwards but that he followed petitioner's instructions to get back in the car. *Id.*

During cross-examination of Perez, defense counsel reviewed Perez's actions before, during, and after the incident, particularly as to Perez's decision to leave the

scene with petitioner. At one point during the cross-examination, defense counsel asked Perez, "After he shot Bridgett you could have run away, couldn't you?" Petitioner argues that this question indicated to the jury that counsel believed petitioner had shot the complainant. However, when reviewed in its entirety, it becomes clear that defense counsel's cross-examination was intended to cast doubt on Perez's actions and testimony in context of Perez's own version of the events:

Q. So it's your testimony today you had absolutely no choice in the matter, you had to go?

A. That's correct.

Q. All right. And, so, when [petitioner] said gear it up and didn't tell you exactly what you were supposed to wear, you still brought your gun, you still brought –

A. No, he asked me to bring the guns there.

Q. And you – well, he didn't ask you to bring the ski mask, did he?

A. No.

Q. All right. And he – that was something you decided to do on your own?

A. True.

Q. Okay. He didn't handcuff you there in the back of the Suburban, did he?

A. No.

Q. *After he shot Bridgett you could have run away, couldn't you?*

A. To where? I didn't even know where I was.

Q. Anywhere. You could have gone anywhere.

A. A guy with a car and a gun and I don't even know where I am, I'm supposed to run away in some random direction?

Q. It's dark, it's a wooded area?

A. I don't even know the way to my house from there.

Q. You said that you had – you were armed yourself. You had a gun that contained 30 bullets, a magazine that has 32 bullets in it.

A. 9 millimeter of weak pistol rounds.

Q. Well, that's all he had too, according to your testimony?

A. But also my testimony I said he had an AK-47 in his car.

Q. Okay. Well, you didn't have to go back to the car, did you?

A. Where would I have gone?

Q. *Anywhere but with this guy that you say just murdered a friend of his.*

(Docket Entry No. 29-12, pp. 232–234, emphasis added.)

In rejecting petitioner's claim, the state trial court made the following relevant

findings of fact:

20. The Court finds that, even if the facts provided in the applicant's memorandum are considered, the applicant fails to prove that [trial counsel] implicated the applicant as the shooter during his cross-examination of Alan Perez.

\* \* \* \*

23. The Court finds that the applicant fails to overcome the strong presumption that all of [trial counsel]'s actions were reasonable and based on sound trial strategy.

24.     The Court finds that the applicant fails to allege, and prove that there is a reasonable probability that, but for [trial counsel]'s alleged deficient performance, the result of the proceeding would have been different.

(Docket Entry No. 29-30, pp. 134–135, record citations omitted.)  The state trial court also made the following relevant conclusions of law:

5.      The applicant fails to prove by a preponderance of the evidence that trial counsel's representation fell below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*   *   *   *

9.      The applicant fails to overcome the strong presumption that trial counsel's actions were reasonable and based on sound trial strategy.

10.     The totality of the representation afforded the applicant was sufficient to protect his right to reasonably effective assistance of trial counsel.

*Id.*, pp. 136–137, case citations omitted.

Petitioner's arguments take defense counsel's comment out of context and do not rebut the strong presumption that counsel's actions were reasonable and based on sound trial strategy.  Counsel's comment was made in reference to Perez's own testimony, and was not an independent statement by counsel that petitioner had shot the complainant.  Moreover, petitioner does not establish that, but for counsel's comment, there is a reasonable probability that the result of the trial would have been different.  Petitioner demonstrates neither deficient performance nor actual prejudice under *Strickland*, and habeas relief is not warranted.

Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of petitioner's claims for ineffective assistance of trial counsel premised on an improper trial comment.

D.     Failure to suppress pretrial statements

Petitioner asserts that trial counsel failed to suppress the admission of petitioner's illegally-obtained pretrial statements at trial. In raising this claim, petitioner again alleges that his pretrial statement was inadmissible due to lack of *Miranda* warnings.

In rejecting this claim, the state trial court made the following relevant findings of fact on collateral review:

21.     The Court finds that, even if the facts provided in the applicant's memorandum are considered, the applicant fails to prove that [trial counsel] was objectively unreasonable or deficient for failing to file a pretrial motion to suppress the applicant's voluntary, non-custodial statement to the police.

22.     The Court finds that [trial counsel] objected to the State's use of the applicant's statement during trial, which resulted in delaying the State from publishing the statement until re-direct after portions were redacted.

23.     The Court finds that the applicant fails to overcome the strong presumption that all of [trial counsel]'s actions were reasonable and based on sound trial strategy.

24.     The Court finds that the applicant fails to allege, and prove that there is a reasonable probability that, but for [trial counsel]'s alleged deficient performance, the result of the proceeding would have been different.

(Docket Entry No. 29-30, pp. 134–135, record citations omitted.) The trial court also made the following relevant conclusions of law:

7.  The applicant fails to show that the evidence to which trial counsel failed to object was inadmissible.

8.  The applicant fails to show that the trial judge would have committed error in overruling the objections.

9.  The applicant fails to overcome the strong presumption that trial counsel's actions were reasonable and based on sound trial strategy.

10. The totality of the representation afforded the applicant was sufficient to protect his right to reasonably effective assistance of trial counsel.

*Id.*, pp. 135–38, case citations omitted.

The state trial court on collateral review expressly found that petitioner's statement was a voluntary, non-custodial statement. (Docket Entry No. 29-30, p. 131.) This Court has already determined, *supra*, that petitioner provides no probative summary judgment evidence in the state court record to rebut the presumed correctness of the finding, and he fails to meet his burden of proof under AEDPA. Because the statement was voluntary and non-custodial, petitioner establishes no legal grounds under which counsel could have successfully suppressed the statement. Petitioner shows neither deficient performance nor actual prejudice under *Strickland*, and habeas relief is unwarranted.

Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable

determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of petitioner's claims for ineffective assistance of trial counsel premised on failure to suppress the pretrial statement.

E.    Procedurally defaulted claims

Petitioner claims that trial counsel failed to conduct adequate cross-examination and failed to object to improper statements made by the prosecution during closing arguments.    Respondent argues that these claims are unexhausted, procedurally defaulted, and barred from consideration by this Court.

The exhaustion requirement found in section 2254(b) "is satisfied when the substance of the federal claim is 'fairly presented' to the highest state court on direct appeal or in state post-conviction proceedings[.]" *Johnson v. Cain*, 712 F.3d 227, 231 (5th Cir. 2013). To satisfy the exhaustion requirement, a prisoner must "present the state courts with the same claim he urges upon the federal courts." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (citations omitted). The exhaustion requirement is not satisfied where a petitioner presents new legal theories or factual claims in his federal habeas petition. *Neville v. Dretke*, 423 F.3d 474, 478 (5th Cir. 2005).

The state court records show that petitioner did not raise this claim for ineffective assistance in his first application for state habeas relief. Although he raised the claim in his second application, the application was dismissed by the Texas Court of Criminal Appeals as an abuse of the writ. (Docket Entry No. 29-44, p. 1.)  It is well-settled that dismissal for abuse of the writ constitutes a procedural default that bars federal habeas

review of the merits of a habeas petitioner's claims. *Nobles v. Johnson*, 127 F.3d 409, 422 (5th Cir. 1997); *Fearance v. Scott*, 56 F.3d 633 (5th Cir. 1995). The Fifth Circuit has noted that the Texas Court of Criminal Appeals applies its abuse of the writ rules regularly and strictly. *Fearance*, 56 F.3d at 642. Thus, petitioner's claims are unexhausted and procedurally defaulted.

Federal habeas review of a defaulted claim is available only if a petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) that "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). 2627 (1986). Petitioner does not establish cause for his default and actual prejudice or demonstrate a fundamental miscarriage of justice in this case. Consequently, these claims for ineffective assistance of trial counsel are barred here from federal review.

Respondent is entitled to summary judgment dismissal of these two claims as procedurally defaulted and barred.

## VII. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Counsel's performance on appeal is measured by the same metrics as apply to trial counsel. A petitioner must demonstrate a reasonable probability that, had appellate counsel's performance not been deficient in the manner claimed, the appellate court would have vacated or reversed the trial court judgment based on the alleged error. *Briseno v. Cockrell*, 274 F.3d 204, 210 (5th Cir. 2001). Moreover, it is well established that appellate counsel is not ineffective for failing to present frivolous or legally

meritless arguments on appeal. *Williams v. Collins*, 16 F.3d 626, 635 (5th Cir. 1994). Appellate counsel "need not (and should not) raise every non-frivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000).

Petitioner claims that appellate counsel was ineffective in failing to challenge the State's jury arguments at trial.

In rejecting petitioner's claim against appellate counsel, the state trial court made the following relevant findings of fact on collateral review:

> 25. The Court finds that the applicant fails to meet his burden when he alleges that he received ineffective assistance of appellate counsel[.] The applicant fails to provide sufficient supporting facts in his form application, and the facts provided in his memorandum will not be considered.

> 26. The Court finds that, even if the facts provided in the applicant's memorandum are considered, the applicant fails to prove that [appellate counsel] was objectively unreasonable or deficient for failing to raise trial court error for overruling the objection to the prosecutor's comments on evidence outside the record.

(Docket Entry No. 29-30, p. 135, record citations omitted.) The state trial court also made the following relevant conclusions of law:

> 11. The applicant fails to prove by a preponderance of the evidence that appellate counsel's decision not to raise a particular point of error was objectively unreasonable, and there is a reasonable probability that, but for counsel's failure to raise that particular issue, he would have prevailed on appeal.

> 12. The totality of the representation afforded the applicant was sufficient to protect his right to reasonably effective assistance of appellate counsel.

*Id.*, p. 138, case citations omitted.

To warrant habeas relief for ineffective assistance of appellate counsel under *Strickland*, petitioner must demonstrate that, but for counsel's failure to raise the issue of trial court error on appeal, there is a reasonable probability that he would have prevailed on appeal. That is, petitioner must establish in the record that the proposed issue raising trial court error would have resulted in a successful appeal. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000).

Petitioner falls well short of this mark. His conclusory assertions of prosecutorial and trial court error are insufficient to show that the complaints would have succeeded on appeal. Moreover, his disagreements with the state court findings and determinations are insufficient to meet his burden of proof under AEDPA. Petitioner shows neither deficient performance nor actual prejudice under *Strickland*, and habeas relief is unwarranted.

Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of petitioner's claims for ineffective assistance of appellate counsel.

## VIII. EVIDENTIARY HEARING

A district court may hold an evidentiary hearing only when the petitioner has shown either that a claim relies on a new, retroactive rule of constitutional law that was

previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or that the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii). The petitioner must also establish that the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable juror would have convicted him. 28 U.S.C. § 2254(e)(2)(B). Petitioner here has not met these requirements, and the Court has determined that no evidentiary hearing is necessary for disposition of the claims raised in this habeas proceeding.

## IX.  CONCLUSION

Respondent's motion for summary judgment (Docket Entry No. 28) is **GRANTED** and this lawsuit is **DISMISSED WITH PREJUDICE**.  Any and all pending motions are **DENIED AS MOOT**.  A certificate of appealability is **DENIED**.

Signed at Houston, Texas, on this the _____ day of February, 2020.


KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE